This is case number 4-12-0841, David and Karen Yocom v. City of Casey. For the appellant, we have attorney Frank Weber. And for the appellee, we have attorney William Sunderman. I want to thank counsel for coming early. And we can get started early and get you out of here as well as ourselves. All right. Mr. Weber, are you ready to proceed? Yes, ma'am. All right. Let me do so. May it please the court, I'm Frank Weber. I represent the plaintiffs in this case, David and Karen Yocom. They happen to be here with us today. The appeal is from the court's judgment of Honorable Gast in the Circuit Court of Clark County. His ruling, of course, I believe has two crucial errors of law in it. And I believe his ruling should be reversed because of those errors. The first one being his specific finding that the health insurance benefit for retirees, that is the subject of this case, was not a part of the compensation of my client, David Yocom. The second error I believe he made is his finding that my client, Mr. Yocom, and his wife Karen had no vested right to a continuation of that retiree health insurance benefit. A little background here. Dave was an alderman of the City of Casey for 11 years. He also was entitled to a two-year military credit for retirement in these health insurance benefits. He served from 1993 through 2004, and during that time, of course, you're familiar with actions that were taken by the City Council of Casey instituting a retiree health insurance benefit for aldermen. That was first adopted in 1998 and then subsequently amended in January of 2000. Mr. Yocom was last elected to office to take for a term commencing May 1 of 2001. So his last term of office basically commenced more than a year and a half after the final action that the Council took there concerning this retired health insurance benefit for older persons. He did retire in May of 2004 as an alderman and retired from his other employer, Sears, in early 2010, prior to this action that was taken by the Casey City Council. As I indicated, I think it's important to take a look at Judge Gar's ruling with regard to his finding that this retiree health insurance benefit could not be part of the compensation for aldermen. And I think to do that, we must look at the Illinois Municipal Code. And I've cited that in my brief. But in essence, the corporate authorities of a municipality such as the City of Casey have the authority to establish salary and compensation, the statute mentions salary and compensation, for aldermen. And that's exactly what they did when they took their action in 1998 and then again in 2000 to institute this retiree health benefit for aldermen. The... Well, Council, clearly they have the right to establish that, but they also have the right to change it as well, don't they? They would, depending on the facts of the case. I believe the law is clear. The Illinois Supreme Court has looked at whether or not a certain piece of legislation, in this case action by the City Council's legislation, can be retroactive. And in looking at it, they must look at whether or not it would affect vested rights of those that would be affected by the change in the legislation. Keep in mind Mr. Yochum had retired as an alderman in 2004, some six years prior to the time that this action was taken to terminate payment for that retiree health insurance benefit. So yes, I acknowledge that a legislature has a right to amend its prior laws, but clearly the Illinois Supreme Court has said that has its limitations and it depends on whether or not there is a vested right. Typically, there's a presumption that a law will be prospective only, and if it is retroactive, then we're before the court, as we are here today, on a determination whether or not the rights that were established by the legislature here did become vested. What's the case that you're relying on? You said the Supreme Court has decided that issue. I would refer you to the Armstead case. Yes, that's a case that I think everyone has cited here. But if I may look at that case, and that case involved some state legislation, but basically it was legislation concerning an amending of a statute concerning the Gasoline Storage Act. But in any event, the court there spent quite a bit of time talking about the vested rights that one might have and whether a piece of legislation should become retroactive or not. And there said, if I may quote just the sentence, the court has defined, it says this court has defined vested right as an expectation that is so far perfected that it cannot be taken away by legislation. Keep in mind, at the time this 2010 ordinance was adopted by the city of Casey, which is the subject of our lawsuit, Mr. Yocum had retired, was receiving the benefit of the retiree health insurance plan that a city council had put into place. So, you know, he basically had perfected any expectation that he had by applying for and was at that point receiving this benefit. There was nothing further to be done on his part to have this benefit. In the prior argument, and I think Brie's here in the courtroom when the other cases are. Yes, I was.  And apparently CMS has the right with 60 days notice to eliminate the insurance program. Well, that may be the case, but I believe Attorney Ray's response, and I'll go beyond that, was, well, they haven't terminated the plan. Of course, the existence of that has to be, the knowledge of that has to be attributed to the plaintiff, or to the individuals who receive the benefits. That the state can decide, we're no longer going to fund it, we're no longer going to manage it, it's gone. How can you rely upon that, which is, I don't know anybody today that has great trust in the promises of state government. We might have more in municipal government, but they're telling you, we'll cut this when we feel like it, but we'll give you 60 days notice. Well, I think in response to that, in reading the motions that were made by the city council in adopting this plan, I don't believe they really tied it to the state program. It just happened to be their insurance carrier at the time. Certainly, if the state canceled the plan, there are other carriers that provide insurance coverage for municipal employees. Our understanding, and Mr. Sunderman made comment on this, is that CMS not only ran it, but funded it. If that plan is eliminated, the city would then be, whether they go out and get coverage from somebody else or not, the city is going to have to pay. The expectation was, when this benefit was provided, it's not going to cost the city anything. Or a minimal amount. I would take issue with Mr. Sunderman's comment that CMS funds the state health insurance benefit. There's nothing in the record to indicate that. To the contrary, the record, the pleadings which have been admitted, are the fact that, at this time, my clients have to pay the cost of participating in the plan which was previously borne by the city of Casey. If you look at that plan, it's several pages long, and we probably would have a hard time finding it, but I know there's a provision in there that the city of Casey provides payment of premium to participate in that plan. It's just not a thing that you sign up with the state, and the state pays the whole freight. That's not the plan. And they're paying now over $1,500 a month. Right. If you run for office, if you run for alderman, and you're defeated, do you retire? Or have you been forcibly terminated? It's word games, except that, I don't know that most walking around folks think that elected officials are employees. And, of course, what walking around folks think doesn't matter, but under the law, is there a difference between an elected official and someone who is vetted and screened and hired by a municipality? I think there is, but, again, I think the municipal code provides some protections for elected officials with regard to compensation. Again, as I pointed out before, it's up to the corporate authorities, which is the city council in this case, to set the salary and compensation for elected officials, and that is typically for a defendant. It's for the term of office that they have. The only requirement is to amount, really, I think, is up to the discretion of the city council. There's nothing in the municipal code, nothing's in the record, that Casey has a salary and fee ordinance that establishes a limitation on compensation for an alderman, but the only limitation in terms of what the salary or compensation that the corporate authorities can set is that they must set it at least 180 days before the beginning of the next term for it to apply to those persons that are then elected, and an alderman serves for four years under the municipal code, an elected alderman, and so in this case, in effect, the corporate authorities set what the compensation was to be for aldermen, and that included not only whatever they might be paid in cash as a, quote, fixed amount, but also a benefit that they would carry over into retirement, and this was all adopted more than 180 days before, you know, Mr. Yochum was last elected to office. Council, a moment ago you said you took issue with the opposing council's characterization of the degree of involvement of CMS. While we're up here on competing motions for summary judgment, now it sounds like we've got a disputed fact. I know that's never been brought up until the oral argument earlier today. When you say you take issue with it, it seems... Well, I take issue with him stating a fact that's not in the record, which I take issue with that being a fact. So it would be a question as to what, I believe Mr. Sunderman referred to it as Exhibit A, the contractor agreement between the state and the... Maybe there's more than one municipality, but at least what case... Right, right. They provide a state-sponsored health insurance program for municipalities, and then you join the program and sign an agreement, and that agreement I know provides for payment of amounts to the state on behalf of whoever enrolls in the plan. The money all funnels through the city coffers, as I understand it. In other words, my clients right now pay their funds to the city, and then the city turns around and pays the premium for that. Okay. As I said, under the municipal code, it appears that the black letter law is that the corporate authorities set what the compensation is. The compensation was included, this retiree benefit. It was set. No challenge here to the validity of that action taken by them, and therefore, going back to the trial judges holding that this could not be part of their compensation, I state that I believe the black letter law is that it is part of their compensation. How does the statute read? How does the code read? Do you have an exact... Sure. You want me to just read the entire section? No, no, just the part that talks about... I thought you said there was a section that talked about salary and other compensation. Okay. Establishment. It's in Division 50, which I cited that in my brief. Section 3.1-50-5, Establishment. All municipal officers, except as otherwise provided, shall receive the salary or other compensation that is fixed by ordinance. Salary or other compensation. Is that in terms of retirees or active city councilmen? Well, I'm sure it's active city councilmen. Our position is that the retiree benefit was part of the compensation received by Mr. Yocum for being an older person. And I know the Dell case was cited earlier today, and that's also been the subject of our brief. In that case, the court dealt with that issue of whether or not a retiree health insurance benefit for retired elected officials was part of the compensation for which they worked, and that court did hold that it was. Salary or other compensation. I cited a Supreme Court case, I believe it was a Harlan case, which says that under the Illinois Constitution, in the section dealing with local government, the term salary, as used in that connotation, includes all forms of compensation received by an elected official. And so therefore, a benefit that was in essence deferred, such as a retirement benefit here, I suggest the law being that that is part of the compensation for which he provided his service. As far as the requirements of meeting the test of whether equitable estoppel should apply in this case, certainly one of the court's criteria is there must have been some affirmative act by the municipality. That has clearly been held to be legislation, and what we're dealing with here is legislation that was adopted by the City Council. As I pointed out earlier, it is my time... When it goes red, you're out of time. Okay. Again, did my client rely upon that affirmative act of the City Council? Well, certainly when he retired, he enrolled in the plan. He was employed full-time by Sears. It's undisputed that when he retired from Sears, he elected not to join their plan because he was already on the City of Casey's plan. So certainly there was a detrimental reliance by him on this action that had been taken by the Casey City Council. Now, another point I want to make. Judge Garst makes something of the fact that he was a member of the City Council at the time that this was adopted. I believe the law is clear that an action by a City Council is by the body as a whole, not by its individual members. If we were going to hold that a salary or compensation could never be increased for an elected official, if he served 40 years, is he going to be stuck with the salary when he was first elected to office, even though he was elected every four years? You are out of time now, Mr. Weber, but you'll have a chance on rebuttal. Thank you. Thank you. Mr. Sunderman? I'll spare the court the introduction. I hope you remember me from an hour or two ago. It is my privilege to represent the City of Casey, and I'd like to address a couple of points that Mr. Weber has raised. First of all, the issue of compensation. The trial court found that the plaintiffs in this case did not treat or consider the payment of health insurance premiums as additional compensation. Mr. Weber has suggested that the Online Municipal Code requires or allows members of the body to designate or determine their pay and compensation. They must do so at least 180 days before it becomes effective. Now, Mr. Yochum, the plaintiff in this instance, was on the council when the initial resolution was approved. The initial resolution is Exhibit C to the plaintiff's motion for summary judgment. The trial court had that before it. Interesting thing about the language of Exhibit C, that's June 1 of 1998, at page 3 of the minutes, the following discussion was made by Mayor Savage. He proposed changes in the elected officials' health insurance when retiring, and they discussed what these changes would be. The minutes then reflect, Alderman Gerard motioned the approval, motioned to approve the proposed health insurance changes for current elected officials when retiring. It was, in essence, effective immediately. Any of the elected officials on the council at the time they voted for this, June 1 of 1998, who had been on for four years, could have resigned the next day and picked up their bonus. So, I'm not sure the argument that it had to be compensation because the council can create their compensation, is a good one in light of the fact that they made this program effective immediately for themselves, not for the next people elected 180 days away. That's a point I think that's important to make. I'm not going to argue the complete redo of my original argument with respect to Estoppel. I don't think it applies. The language of the contract with the state of Illinois precludes it from being a vested right. And I would suggest to the court, I did not intend to lead the court to believe that the state of Illinois was paying all the premiums because it does not. CMC, CMS rather, contracts for insurance based upon the number of covered lives they can rustle up, and the more covered lives there are, the cheaper the rate. And then they divvy the rate up among the participating municipalities as well as the state. So, the city of Casey is paying this premium, not the state. Mr. Sunderman, how do you answer the argument that the city council members didn't care who the insurance was with as long as they had it? So, the fact that it may have been under this contract with the state, and the state could terminate that contract with 60 days notice, the city would have had 60 days to go out and purchase a contract somewhere else. Well, that's a good argument, but the plain truth of the matter is that this contract was the only thing that provided for the insurance. The city of Casey didn't have a contract with anybody else. Well, of course, because they had it with the state. But the city wasn't obligated to go out and get additional insurance if the state canceled this coverage. There's nowhere that says in any of the resolutions that the city guarantees coverage for these people. The city participated in a program that made it available to the aldermen, and that's a key distinction, with all due respect. Okay, I don't quite understand that. Well, CMS provides this program for the cities to participate in. They can do so or they don't have to. If they do participate in the program, then they go with whatever the program requirements are, including the fact that it could be canceled in 60 days. The adoption of the ordinance to provide those benefits according to the program doesn't mean that if the program fails, the city's got to go out and provide insurance at any cost. Did the ordinance say we will provide insurance pursuant to the CMS plan of the state of Illinois? There is a specific allegation in the complaint that they were provided insurance through a plan which had been adopted prior to the plaintiff's appointment. See Exhibit A. Exhibit A is the plan. Right, so that was the plan that they had. But my question is, they didn't obligate themselves to provide only that plan in the ordinance. Any health insurance plan would have been acceptable to the aldermen. They didn't care where it came from, I assume. I assume that's correct, but at the time this adoption was made, according to the complaint, it was made in accordance with this plan. I understand that. Because that's the plan they had available to them that they opted to use. Right. But they weren't required to use that plan. No, they weren't. They could have gone out and bought every alderman personal coverage any way they wanted to. They have the authority to do that. They could have bought them a new Mercedes to get them to the hospital. And the ordinance wasn't limited to that plan alone. No, but the complaint provides that it was provided in accordance. Yeah, because that's in fact where it was coming from. And that's what the trial court had to deal with. So, I think, in all due respect, the trial court found that it was not compensation and can find so just from reading the minutes of this meeting and seeing how they applied it. So, and again, as far as the equitable estoppel is concerned, not only did they have the plan before them, but we know that they made amendments to the plan as they progressed through their aldermanic career. There was an attorney general's opinion before this ever arose that said the cities could cancel it. There is simply no basis for the finding of an estoppel. And let me address the Dell case and the Marconi case if I can just briefly. The Dell case does not in and of itself say it applies to elected officials. Now, plaintiff Yochum in his brief says it applies to elected officials. Counsel just referred to the fact that it applies to elected officials. That's not what the case says. The case dealt with employees who were non-union employees and office holders. That's the term the court used, non-union employees and office holders. Office holders can be the city clerk who's an officer, the city treasurer who's an officer, the corporation counsel who's an officer, the chief of police who's an officer, the chief of the fire department, and depending on the size of the municipality, other non-union appointed employees to appointed positions are officers. I don't know whether Dell applied to elected officials or not. There's not a single reference in the case to a councilman, commissioner, or an alderman. The appellate court specifically dealt with office holders and non-union employees. So to draw out from the Dell case an assumption that it is courted protection to the legislative members of the group is just not there. Maybe we could dig out the record someplace and it would say that the printed opinion does not give any support to that proposition. The Marconi case is interesting, and I made an observation about it this morning. Let me just say this about that case. I said this morning I was surprised and disappointed in it. Not disappointed because particularly of the holding, and it doesn't hurt my position, I think it strengthens the city of Casey's position, I thought the case was aggressive. I thought the opinion was aggressive. I thought the opinion went where it didn't need to go. I thought the opinion in challenging and disagreeing with the first district appellate court, I thought the opinion in challenging and disagreeing with the Seventh Circuit Court of Appeals was a bit of a stretch. I thought the adoption of a Wisconsin case was a little odd. But the ruling may be in and of itself is correct. But that ruling relates only to the rights of retired union members who were part of a collective bargaining unit, but who are no longer protected by the union because they're retired. And nobody negotiates for retired people. So I think the result is correct, but it doesn't have anything to do with the city of Casey's employees. In Marconi, they held, and I think appropriately, that somebody who had worked 40 years as a union pipefitter for the city of Joliet was entitled to receive the benefits he'd labored for. That's a far cry from a part-time alderman who attends a meeting twice a month. More importantly, they found that vesting could be determined and presumed unless the language of the collective bargaining agreement prohibited it. We don't have that here. Or unless the contract of the collective bargaining agreement was ambiguous. And if it was ambiguous, then the court could consider extrinsic evidence as to whether or not rights vested. Well, the only thing we have on summary judgment is the evidence that's in the record. And the evidence in this record indicates that they were not employees and there was not an intended vesting. And for that reason, Marconi really assists the city's position when we say these people don't have a vested right. They're just like the rest of the people in this world. They get insurance for a purpose, but the state may have to change its position. And that's exactly what the city of Casey has done with the economic circumstances. They're no different for that community than they are for the state in general. I'd be glad to answer any questions. I don't see any. Thank you, Mr. Sunderman. Thank you very much. Mr. Weber, rebuttal? In response to Mr. Sunderman's argument about the immediate effectiveness of the 1998 ordinance or motion that was passed, the law of Illinois is clear and I don't think subject to any debate that even though a council may vote to increase its salary, even though the ordinance may speak in terms of immediate effectiveness, that is subject to the limitations of the Illinois Municipal Code that says a salary can't be for a compensation or benefit, whatever you might want to call it, cannot be increased or diminished, or that must occur at least 180 days before the beginning of the term of the new officer. So I think really that's a red herring to say in their motion they did indicate that it took effect 180 days from now. It doesn't have to because the Municipal Code makes it so. As far as the Dell case not mentioning elected officials, it spoke in terms of office holders. The only office holders that it could apply to I believe would be elected officials. And why they didn't use elected officials in terms of office holders, I don't know, but they did. I did cite a Louisiana case, which I really am hesitant to bring up, a Louisiana case, but it's on point, folks. And lastly, the Marconi case, I didn't cite that in my brief. The only thing I would point out of that that I think is important to look at, that there is a presumption in favor of vested rights in this area of the law. According to the 3rd District? Yes, I mean, but that is something to at least look at, and I haven't seen anything out of this district that maybe is to the contrary, and if there is, I apologize for not knowing. So thank you very much. Thank you, Counsel. This court will be in recess. We'll take this matter under advisement.